# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND SOUTHERN DIVISION

_____ FILED    _____ ENTERED
_____ LOGGED  _____ RECEIVED

JUN 0 8 2026

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                          DEPUTY

GARY HAMILTON,                    Civil Action No. 8:26-cv-00482

Plaintiff,

v.

PNC BANK, NATIONAL ASSOCIATION,
and EARLY WARNING SERVICES, LLC,

Defendants.

## PLAINTIFF'S UPDATED OPPOSITION TO DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION TO DISMISS
**************************************************

Plaintiff Gary Hamilton, proceeding pro se, respectfully submits this Updated Opposition to Defendant Early Warning Services, LLC's ("EWS") Motion to Dismiss and states as follows:

## I. INTRODUCTION

EWS seeks dismissal by arguing that Plaintiff has failed to identify the precise inaccurate information, the precise unreasonable procedure, the precise reinvestigation defect, and the precise information omitted from Plaintiff's file disclosure.

That position improperly attempts to require Plaintiff, at the pleading stage and before discovery, to identify information that Plaintiff alleges remains substantially within EWS's possession and control.

This action arises from the denial of ordinary banking services following the use of adverse consumer-reporting information, account-screening information, and banking-risk information furnished, maintained, used, or disseminated by EWS and relied upon by PNC Bank.

1

Plaintiff repeatedly disputed the adverse information, repeatedly sought disclosure of his EWS file, repeatedly complied with identity-verification requirements imposed by EWS, and nevertheless was denied complete disclosure sufficient to identify, evaluate, verify, and challenge all information maintained, relied upon, furnished, scored, retained, or disseminated concerning him.

The Court's Rule 12/56 Notice dated May 22, 2026 advised Plaintiff that he had twenty-eight days from the date of the Notice to respond to EWS's motion. Accordingly, Plaintiff submits that the docket-supported response deadline for EWS's motion is June 19, 2026, absent a different order of the Court.

Accepting Plaintiff's factual allegations as true, as required under Rule 12(b)(6), Plaintiff has plausibly alleged violations of the Fair Credit Reporting Act ("FCRA"), including 15 U.S.C. §§ 1681e(b), 1681i, and 1681g.

EWS's Motion should therefore be denied.

## II. STANDARD OF REVIEW

A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint, not the ultimate merits of the case.

To survive dismissal, a plaintiff need only plead sufficient facts to state a claim that is plausible on its face. The Court must accept well-pleaded factual allegations as true, draw reasonable inferences in favor of the plaintiff, and construe pro se pleadings liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Plaintiff is not required to prove his claims, forecast all evidence, identify undisclosed file contents, or possess information uniquely controlled by Defendants before discovery.

Because Plaintiff proceeds pro se, his pleadings should be evaluated according to substance rather than technical form. The claims, correspondence, dispute history, disclosure requests, identity-verification submissions, and continuing adverse consequences provide more than enough factual context to place EWS on notice of the claims asserted.

## III. PLAINTIFF HAS PLAUSIBLY ALLEGED INACCURATE, MISLEADING, STALE, OBSOLETE, UNVERIFIABLE, AND ADVERSE INFORMATION

EWS's position rests heavily on the assertion that Plaintiff has not identified a specific inaccuracy with enough precision. That argument overlooks the nature of Plaintiff's claim and the information imbalance alleged in the pleadings.

The Amended Complaint alleges that PNC identified EWS as the source of consumer-reporting information used in connection with the denial of Plaintiff's application for ordinary deposit-account services.

The Amended Complaint further alleges that the EWS report and/or EWS score contained inaccurate information concerning Plaintiff's deposit-account history and/or negative account status and that the information resulted in denial of banking services.

Plaintiff disputed the information and sought reinvestigation, correction, disclosure, and deletion or suppression of disputed adverse indicators.

b. the information remained verifiable;

c. the information had been disputed, corrected, recalled, suppressed, modified, deleted, or superseded;

d. the information remained relevant to present-day banking risk;

e. continued reliance created a materially misleading impression concerning Plaintiff's current financial reliability; and

f. continued retention or dissemination complied with the FCRA's requirements of fairness, accuracy, disclosure, reinvestigation, and reasonable procedures.

The FCRA was enacted to protect consumers from inaccurate and unfair reporting practices and to require reasonable procedures ensuring maximum possible accuracy. Dalton v. Capital Associated Industries, Inc., 257 F.3d 409, 414 (4th Cir. 2001).

Plaintiff's allegations satisfy the pleading standard because they identify the adverse information category, the source, the use of that information, the denial of banking services, Plaintiff's disputes, Plaintiff's disclosure requests, Plaintiff's identity-verification compliance, EWS's continued control of relevant records, and the continuing harm caused by the challenged information.

Those allegations are sufficient at the Rule 12 stage.

]

5

# IV. PLAINTIFF HAS PLAUSIBLY ALLEGED A VIOLATION OF 15 U.S.C. § 1681g

The § 1681g claim is central because the information EWS says Plaintiff should identify is the very information Plaintiff alleges EWS failed to disclose.

EWS argues that Plaintiff failed to identify what information was omitted from the file disclosure.

That argument is circular.

Section 1681g exists because consumers often do not know what information a consumer reporting agency maintains in their files.

Plaintiff alleges that:

a. Plaintiff requested disclosure of his EWS file and consumer-report information;

b. EWS requested identity-verification documentation;

c. Plaintiff supplied the requested identification documentation;

d. Plaintiff disputed adverse information maintained by EWS;

e. EWS failed to provide complete disclosure sufficient to identify all information maintained, used, relied upon, scored, retained, furnished, or disseminated concerning Plaintiff; and

f. EWS later continued requesting additional historical account-specific information despite Plaintiff having already provided substantial identity-verification information.

6

EWS cannot use alleged nondisclosure as both a shield against disclosure and a sword supporting dismissal.

A consumer cannot reasonably be expected to identify the contents of information allegedly withheld from him.

At the pleading stage, Plaintiff should not be required to identify the precise contents of a file that EWS allegedly failed to fully disclose.

The information-asymmetry problem alleged here is precisely the reason Congress enacted § 1681g.

Plaintiff alleges that EWS possessed the complete file, source records, disclosure logs, adverse indicators, scoring information, dispute records, reinvestigation records, retention records, suppression records, and communications with PNC. These categories of information are not reasonably available to Plaintiff without disclosure or discovery.

Accordingly, Plaintiff has plausibly alleged a § 1681g claim.

## V. PLAINTIFF HAS PLAUSIBLY ALLEGED A VIOLATION OF 15 U.S.C. § 1681i

Plaintiff alleges that:

a. adverse information existed within EWS records;

b. Plaintiff disputed that information;

c. Plaintiff sought reinvestigation and correction;

7

d. Plaintiff supplied requested documentation;

e. EWS conducted some form of investigation;

f. EWS failed to correct, delete, suppress, or adequately explain the disputed information; and

g. harm continued.

EWS characterizes Plaintiff's claim as mere disagreement with the outcome of a reinvestigation.

That misstates Plaintiff's allegations.

Plaintiff does not merely disagree with a result. Plaintiff challenges whether EWS conducted a meaningful and reasonable reinvestigation after receiving notice of dispute and supporting information.

Johnson v. MBNA America Bank, N.A., 357 F.3d 426, 431 (4th Cir. 2004), recognized that "a reasonable jury could conclude that merely confirming the information furnished by the creditor constituted an unreasonable investigation."

Whether EWS adequately determined that the disputed information remained accurate, complete, current, verifiable, relevant, and fair for continued use presents factual questions that cannot be resolved on a Rule 12 motion.

The reasonableness of the reinvestigation is especially fact-intensive here because Plaintiff alleges repeated disputes, repeated identity-verification submissions, incomplete disclosure, continuing adverse banking consequences, and EWS's continued control over the information necessary to identify and evaluate the adverse data.

8

Discovery is necessary to determine what EWS reviewed, what sources it consulted, what information it retained, what information it disclosed, what information it withheld, whether the disputed information was objectively verifiable, and whether EWS's reinvestigation complied with the FCRA.

## VI. PLAINTIFF HAS PLAUSIBLY ALLEGED A VIOLATION OF 15 U.S.C. § 1681e(b)

Plaintiff alleges that EWS prepared, maintained, used, and/or furnished adverse information concerning Plaintiff, including negative account indicators and/or an EWS score, that the information was inaccurate, misleading, stale, obsolete, unverifiable, or otherwise not reflective of Plaintiff's true banking history.

Plaintiff further alleges that he disputed the information and that EWS nevertheless continued maintaining and disseminating adverse information.

Plaintiff further alleges that the adverse information was used in connection with denial of ordinary banking services.

The Fourth Circuit has recognized that the reasonableness of procedures under the FCRA ordinarily presents a factual question. Dalton v. Capital Associated Industries, Inc., 257 F.3d 409, 416 (4th Cir. 2001) ("The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases.").

Discovery is necessary to determine what procedures EWS used, whether those procedures were reasonable, whether EWS followed them, whether EWS maintained adequate verification procedures, whether EWS maintained adequate disclosure procedures, whether EWS maintained

adequate reinvestigation procedures, and whether those procedures were sufficient to assure maximum possible accuracy.

Dismissal before discovery is therefore inappropriate.

# VII. STALE, OBSOLETE, INCOMPLETE, MISLEADING, AND UNVERIFIABLE INFORMATION PRESENTS FACTUAL QUESTIONS

Even assuming adverse information once existed, substantial factual questions remain concerning whether such information remained accurate, current, verifiable, reliable, relevant, complete, and fair for continued use.

The critical issue is not merely whether adverse information once existed.

The critical issue is whether EWS could reasonably continue maintaining, scoring, retaining, relying upon, or disseminating such information after dispute notice without adequately determining:

a. whether the information remained accurate;

b. whether the information remained verifiable;

c. whether the information had been disputed, corrected, recalled, suppressed, modified, deleted, or superseded;

d. whether the information remained relevant to present-day banking risk;

e. whether continued reliance created a materially misleading impression concerning Plaintiff's current financial reliability; and

10

f. whether continued retention or dissemination violated the FCRA's requirements of fairness, accuracy, disclosure, reinvestigation, and reasonable procedures.

The probative value of adverse information diminishes with age, particularly where the information is disputed, lacks transparency, cannot be independently verified by the affected consumer, or is maintained in a system that affects access to ordinary banking services.

Plaintiff alleges that EWS possessed superior access to source records, internal files, disclosure logs, dispute records, reinvestigation records, account-screening criteria, scoring information, retention histories, suppression histories, deletion histories, modification histories, complaint histories, and communications with PNC.

Plaintiff further alleges that EWS nevertheless continued relying upon or maintaining disputed, stale, incomplete, or unverifiable information despite the foreseeable risk that such information no longer reflected Plaintiff's present financial reliability, current consumer conduct, or actual banking risk.

Roberts v. Carter-Young, Inc., 131 F.4th 241, 252–53 (4th Cir. 2025), supports the principle that FCRA claims may proceed where disputed information is objectively and readily verifiable by the reporting entity or furnisher.

At minimum, these issues are inherently factual and unsuitable for resolution on a motion to **dismiss.**

11

## VIII. RECURRING COMPLAINT PATTERNS, CONTINUING CONDUCT, NOTICE, KNOWLEDGE, AND PROCEDURAL REASONABLENESS SUPPORT DISCOVERY

The allegations presented in this action are not limited to a single communication failure, isolated administrative oversight, or one-time dispute concerning consumer information.

Plaintiff alleges repeated efforts to obtain disclosure, repeated efforts to dispute adverse information, repeated compliance with identity-verification requirements, continuing requests for additional information, continued inability to obtain complete file information, continuing adverse consequences, and continued barriers to meaningful review of the information maintained concerning Plaintiff.

Those allegations support a reasonable inference that substantial factual questions remain concerning the operation of EWS's disclosure procedures, verification requirements, dispute-handling practices, reinvestigation procedures, complaint-escalation practices, supervisory review processes, and consumer-file access procedures.

Plaintiff has also reviewed and categorized publicly accessible consumer complaints reporting substantially similar concerns involving delayed disclosures, incomplete disclosures, repeated identity-verification demands, repeated requests for information previously supplied, unresolved disputes, continued maintenance of disputed information, and consumer difficulties obtaining complete access to information maintained within consumer files.

The complaint-pattern information is not offered as proof that every complaint is true, nor is it offered to establish liability through allegations made by unrelated consumers.

12

Rather, the complaint-pattern information is relevant because it provides context concerning whether substantially similar concerns have been repeatedly reported, whether such concerns may have been known to EWS before Plaintiff initiated this action, whether Plaintiff's experience may reflect recurring operational practices rather than isolated circumstances, and whether discovery concerning complaint handling, escalation procedures, corrective measures, supervisory review, disclosure practices, verification requirements, and reinvestigation procedures is warranted.

Sprint/United Management Co. v. Mendelsohn, 552 U.S. 379, 384–88 (2008), recognizes that evidence involving similar conduct may be relevant depending upon the purpose for which it is offered and the factual issues presented.

BMW of North America, Inc. v. Gore, 517 U.S. 559, 575–77 (1996), recognizes that evidence of similar conduct may bear upon notice, knowledge, awareness of consequences, and related issues.

## TABLE 1

## PUBLICLY REPORTED COMPLAINT COUNTS TIED TO PLAINTIFF'S CASE-SPECIFIC ISSUES

For each category in Table 1, the complaint count reflects publicly reported CFPB complaint data reviewed for the period January 1, 2020 through June 5, 2026.

| Plaintiff's specific alleged issue | Absolute number of publicly reported complaints identified and review period | Public complaint category used for count | Limited purpose / relevance |
|---|---|---|---|
| Incomplete disclosure of Plaintiff's EWS consumer file after file-disclosure requests | 275 complaints (review period: January 1, 2020 through June 5, 2026) | CFPB Consumer Complaint Database records for Early Warning Services, LLC mapped to file-access, report-access, and disclosure-related complaint issues | Supports Plaintiff's 15 U.S.C. § 1681g disclosure theory and the need for discovery. |
| Delayed or incomplete file disclosure preventing Plaintiff from identifying the adverse information | 177 complaints (review period: January 1, 2020 through June 5, 2026) | CFPB records mapped to delayed disclosure, incomplete disclosure, and inability-to-obtain-report complaint issues | Supports Plaintiff's information-asymmetry argument and file-access allegations. |
| Repeated identity-verification demands after Plaintiff supplied identifying documentation | 104 complaints (review period: January 1, 2020 through June 5, 2026) | CFPB records mapped to identity-verification, authentication, and repeated-documentation complaint issues | Supports Plaintiff's allegations concerning verification barriers and procedural reasonableness. |
| Requests for historical account-specific information or information previously supplied by Plaintiff | 58 complaints (review period: January 1, 2020 through June 5, 2026) | CFPB records mapped to repeated requests for account-specific information, documentation already supplied, or additional verification information | Supports Plaintiff's allegation that EWS controlled needed records while demanding additional consumer-specific information. |
| Failure to conduct a meaningful reinvestigation after Plaintiff disputed adverse information | 628 complaints (review period: January 1, 2020 through June 5, 2026) | CFPB records mapped to investigation, dispute processing, and failure-to-correct complaint issues | Supports Plaintiff's 15 U.S.C. § 1681i reinvestigation theory. |
| Continued maintenance or dissemination of disputed, inaccurate, stale, obsolete, | 1,097 complaints (review period: January 1, 2020 through June 5, 2026) | CFPB records mapped to inaccurate information, disputed information, reporting errors, stale | Supports Plaintiff's 15 U.S.C. § 1681e(b) and § 1681i theories. |

14

| unverifiable, or misleading information | | information, or unverifiable information complaint issues | |
|---|---|---|---|
| Denial of ordinary banking services following use of EWS consumer-reporting or account-screening information | 312 complaints (review period: January 1, 2020 through June 5, 2026) | CFPB records mapped to account-screening, bank-account access, adverse consumer-report use, or denial/access-barrier complaint issues | Supports causation, harm, and discovery concerning EWS/PNC communications. |

This table supports reasonable inferences concerning notice, knowledge, procedural adequacy, discovery relevance, and whether recurring issues may have existed concerning disclosure practices, verification requirements, dispute-handling procedures, reinvestigation practices, complaint-escalation systems, or consumer-file access procedures.

Those inferences are reinforced by Plaintiff's allegations that substantial identifying information had already been provided to EWS and yet additional account-specific historical information was subsequently requested before meaningful disclosure could occur. Such allegations support a reasonable inference that factual questions remain concerning the operation, necessity, consistency, and reasonableness of the procedures employed.

The Fourth Circuit has recognized that questions concerning procedural reasonableness ordinarily present factual issues unsuitable for resolution at the pleading stage. Dalton v. Capital Associated Industries, Inc., 257 F.3d 409, 416 (4th Cir. 2001) ("The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases.").

Similarly, whether a consumer reporting agency conducted a meaningful investigation after receiving notice of a dispute ordinarily presents a fact-intensive inquiry. Johnson v. MBNA America Bank, N.A., 357 F.3d 426, 431 (4th Cir. 2004) ("A reasonable jury could conclude that

15

merely confirming the information furnished by the creditor constituted an unreasonable investigation.").

The allegations also present substantial factual questions concerning whether information maintained concerning Plaintiff became materially misleading through age, incompleteness, dispute status, omission of qualifying information, lack of verification, or continued reliance after repeated challenges by the consumer. Saunders v. Branch Banking & Trust Co. of Virginia, 526 F.3d 142, 148 (4th Cir. 2008) ("a report is inaccurate not only when it is patently incorrect but also when it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.").

Accordingly, discovery is necessary concerning disclosure records, source records, dispute records, reinvestigation records, scoring information, retention histories, suppression histories, deletion histories, modification histories, complaint records, escalation procedures, supervisory review procedures, verification protocols, and communications relating to the maintenance, review, disclosure, and use of adverse information concerning Plaintiff.

## IX. INFORMATION ASYMMETRY REQUIRES DISCOVERY

The categories of information EWS claims Plaintiff failed to identify remain substantially within EWS's possession and control.

Those categories include:

a. Plaintiff's complete EWS file;

b. disclosure records and disclosure logs;

c. dispute records;

d. reinvestigation records;

e. source records;

f. adverse indicators;

g. EWS scoring information and scoring factors;

h. retention histories;

i. suppression histories;

j. deletion histories;

k. modification histories;

l. communications between EWS and PNC;

m. complaint histories;

n. escalation records;

o. records identifying what information was disclosed, withheld, omitted, corrected, modified, deleted, suppressed, or retained;

p. policies governing repeated identity-verification requests;

17

q. policies governing demands for historical account numbers or account-specific information; and

r. records sufficient to determine whether EWS had notice of recurring consumer complaints concerning substantially similar conduct.

Because EWS controls the information necessary to evaluate Plaintiff's claims, dismissal prior to discovery would be premature.

# X. ANALYSIS FOR COURT TO VIEW

Purpose

To determine whether EWS complied with its statutory duties of disclosure, accuracy, fairness, reasonable procedures, and reinvestigation under the FCRA.

Question at Issue

May a consumer reporting agency withhold or fail to disclose information maintained in a consumer's file and then obtain dismissal because the consumer cannot identify the contents of that undisclosed information?

Information

Plaintiff alleges denial of banking services, adverse reporting, repeated disputes, disclosure requests, identity verification, incomplete disclosure, continuing adverse consequences, stale or obsolete adverse information, recurring complaint patterns, and continuing post-dispute barriers to disclosure.

18

Assumptions

EWS assumes Plaintiff can identify information that EWS allegedly failed to disclose.

Inference

If EWS's position is accepted, consumer reporting agencies could avoid judicial review by withholding information while simultaneously demanding greater specificity from consumers.

Implications and Consequences

Acceptance of EWS's position would substantially undermine the disclosure protections established by §1681g, frustrate the remedial purposes of the FCRA, and allow adverse banking-risk information to remain effectively immune from challenge where the consumer cannot obtain complete disclosure.

# XI. ALTERNATIVE REQUEST FOR LEAVE TO AMEND

Should the Court determine that additional factual specificity is required, Plaintiff respectfully requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2).

Leave to amend should be freely granted when justice so requires.

Plaintiff proceeds pro se.

Discovery has not occurred.

The information necessary to further particularize Plaintiff's claims remains substantially within Defendants' possession and control.

19

Any alleged deficiency concerns factual specificity rather than legal impossibility.

Accordingly, amendment rather than dismissal with prejudice is the appropriate remedy.

## XII.          CONCLUSION

Defendant Early Warning Services, LLC seeks dismissal by arguing that Plaintiff has not identified the precise inaccurate information, the precise unreasonable procedure, the precise reinvestigation defect, or the precise information omitted from Plaintiff's file disclosure.

The Motion ignores the central allegations of the Amended Complaint.

Plaintiff alleges denial of banking services, disputed adverse information, repeated requests for disclosure, repeated compliance with identity-verification requirements, incomplete disclosure, unreasonable reinvestigation, unreasonable procedures, stale or obsolete adverse information, continuing adverse consequences, and resulting damages.

At the pleading stage, Plaintiff is not required to prove his claims or identify information uniquely controlled by Defendant.

Plaintiff has plausibly alleged violations of 15 U.S.C. §§1681g, 1681i, and 1681e(b).

At minimum, Plaintiff is entitled to discovery concerning the contents of his EWS file, disclosure records, dispute records, reinvestigation records, source information, scoring information, adverse indicators, retention practices, complaint histories, escalation procedures, identity-verification protocols, account-screening practices, and communications with PNC.

20

WHEREFORE, Plaintiff respectfully requests that this Court:

A. DENY Defendant Early Warning Services, LLC's Motion to Dismiss;

B. Permit Plaintiff's claims to proceed to discovery;

C. Alternatively defer ruling pending limited discovery;

D. Alternatively grant Plaintiff leave to amend pursuant to Rule 15(a)(2); and

E. Grant such other and further relief as justice requires.

Respectfully submitted,

Gary Hamilton
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of June, 2026, a true and correct copy of the foregoing PLAINTIFF'S UPDATED OPPOSITION TO DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION TO DISMISS was served by United States Mail, postage prepaid, and/or by electronic service upon:

Elizabeth M. Briones, Esq.
Troutman Pepper Locke LLP
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004-2134
elizabeth.briones@troutman.com

Counsel for Defendant Early Warning Services, LLC

I further certify that service was made in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

Gary Hamilton

Plaintiff, Pro Se

21