USDC- GREENBELT
'26 JUL 15 PM3:37

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

GARY HAMILTON,                     Civil Action No. 8:26-cv-00482-DLB

      Plaintiff,

        v.

PNC BANK, NATIONAL ASSOCIATION, and

EARLY WARNING SERVICES, LLC,

      Defendants.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S REVISED SURREPLY IN FURTHER OPPOSITION TO DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff submits this Proposed Surreply pursuant to the accompanying Motion for Leave to File

Proposed Surreply and Motion for Extension of Time. Plaintiff Gary Hamilton, appearing pro se,

respectfully submits this Proposed Surreply in further

opposition to Defendant Early Warning Services, LLC's ("EWS") Motion to Dismiss the Second

Amended Complaint. This Surreply is narrowly directed to legal arguments, factual

characterizations, and procedural positions first raised or materially expanded in EWS's Reply

(Doc. 62), including EWS's request that the Court disregard Plaintiff's Updated Opposition,

EWS's reframing of Plaintiff's Fair Credit Reporting Act ("FCRA") claims, EWS's assertion that

Plaintiff's § 1681g allegations are internally contradictory, EWS's argument that discovery is

legally irrelevant, EWS's challenge to Plaintiff's pattern-and-practice allegations, and EWS's

request for dismissal with prejudice. The accompanying Motion for Leave demonstrates that

these matters fall squarely within the circumstances in which courts in this District permit

surreplies.

## I. INTRODUCTION

EWS's Reply attempts to transform a pleading-stage motion governed by Federal Rule of Civil Procedure 12(b)(6) into a merits determination based upon information uniquely within EWS's possession. The Reply repeatedly argues that Plaintiff cannot identify the precise inaccurate information, the precise omitted file contents, the precise deficiencies in EWS's reinvestigation, the precise unreasonable procedures, and the precise internal records allegedly maintained by EWS. Yet Plaintiff's central statutory allegation is that EWS failed to disclose the very information necessary to identify those matters and failed to conduct the reasonable disclosure and reinvestigation required by the FCRA.

This Surreply does not repeat Plaintiff's prior briefing. Instead, it addresses legal and factual positions that first emerged in EWS's Reply and demonstrates why those positions do not justify dismissal under Rule 12(b)(6).

EWS's analysis rests upon several recurring assumptions:

1.  that Plaintiff was required to plead the contents of records allegedly withheld from him under 15 U.S.C. § 1681g;
2.  that Plaintiff was required to identify internal EWS procedures before discovery;
3.  that Plaintiff's inability to identify undisclosed information demonstrates the absence of a claim rather than the plausibility of a disclosure violation;
4.  that the Court may resolve disputed factual issues concerning reasonableness, completeness, disclosure, reinvestigation, and material accuracy on a motion directed solely to the pleadings;
5.  that Plaintiff's Updated Opposition should be disregarded despite EWS responding to it on the merits; and
6.  that any perceived pleading deficiency requires dismissal with prejudice rather than leave to amend.

Each assumption is legally and logically unsound.

EWS's Reply repeatedly fails  **accuracy**, **completeness**, **logic**, **fairness**, **relevance**, and **depth**.

The Reply,

Selectively characterizes the Second Amended Complaint while omitting material allegations

2

concerning repeated disclosure requests, repeated disputes, repeated identity-verification submissions, continuing adverse banking consequences, and EWS's exclusive possession of the records Plaintiff seeks to identify. Rather than accepting Plaintiff's well-pleaded allegations as true, EWS asks the Court to infer facts in Defendant's favor and to resolve factual disputes before discovery.

The Court should decline that invitation.

## II. SIX STEPS FOR COURT CONSIDERATION

This Surreply walks this Court through six steps.

First, Plaintiff demonstrates that leave to file this Surreply is appropriate under Local Rule 105.2(a) and longstanding District of Maryland authority because EWS's Reply introduces new legal theories, procedural arguments, and factual characterizations that Plaintiff previously had no opportunity to address.

Second, Plaintiff demonstrates that EWS repeatedly misstates the allegations of the Second Amended Complaint by characterizing disclosure-based claims as speculative pleading failures rather than allegations that EWS withheld information Congress required it to disclose.

Third, Plaintiff demonstrates that EWS misapplies Fourth Circuit FCRA precedent by treating material accuracy, reasonable procedures, meaningful reinvestigation, and complete disclosure as issues resolvable on the pleadings rather than fact-intensive questions ordinarily reserved for discovery and later stages of litigation.

Fourth, Plaintiff identifies the unstated assumptions upon which EWS's Reply depends and demonstrates why those assumptions fail under accepted standards of legal reasoning.

Fifth, Plaintiff distinguishes the authorities relied upon by EWS and explains why none compel dismissal under the allegations contained in the operative Second Amended Complaint.

Finally, Plaintiff preserves alternative procedural and substantive grounds for denial of dismissal and preserves all issues appropriately reviewable on appeal should dismissal nevertheless be granted.

## III. STANDARD OF REVIEW

A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint—not the ultimate truth of the allegations, the weight of the evidence, or the likelihood that Plaintiff ultimately will prevail.

The Court must accept well-pleaded factual allegations as true, draw all reasonable inferences in Plaintiff's favor, and construe a pro se complaint liberally. A complaint survives dismissal when it contains sufficient factual matter to state a claim that is plausible on its face. Plaintiff is not required to prove his case, identify evidence exclusively within Defendant's possession, or negate anticipated defenses before discovery.

That standard is particularly important here because EWS repeatedly asks the Court to resolve factual questions concerning:

- the contents of Plaintiff's consumer file;
- EWS's internal disclosure records;
- EWS's reinvestigation procedures;
- EWS's internal verification practices;
- EWS's communications with furnishers;
- EWS's communications with PNC;
- EWS's disclosure logs;
- EWS's scoring methodology; and
- EWS's source information.

Those matters reside almost entirely within EWS's control and cannot properly be resolved under Rule 12(b)(6).

## IV. EWS'S RELIANCE ON THE PROCEDURAL HISTORY AND THE NUMBER OF AMENDMENTS DOES NOT ESTABLISH FUTILITY UNDER RULE 15(a)

4

EWS argues that Plaintiff "has already amended his complaint three times" and therefore contends that dismissal with prejudice is warranted because any further amendment would necessarily be futile. That argument misstates the governing legal standard and fails to demonstrate that amendment would, in fact, be futile under Federal Rule of Civil Procedure 15(a).

The proper inquiry is not how many pleadings have been filed during the course of the litigation. Rather, the question is whether Plaintiff has previously been afforded a meaningful opportunity to cure the specific deficiencies identified by EWS and whether any additional amendment would necessarily fail as a matter of law. EWS does not undertake that analysis. Instead, it relies upon a generalized characterization of the procedural history while omitting the factors governing leave to amend under Rule 15.

The Fourth Circuit has repeatedly recognized that leave to amend should be freely given when justice so requires, and that denial of leave is generally appropriate only where amendment would be futile, prejudicial, sought in bad faith, or would result from repeated failures to cure deficiencies after meaningful opportunities to do so. EWS's Reply does not analyze those factors. Instead, it simply counts pleadings and asks the Court to infer futility from the existence of prior amendments.

That inference is unsupported.

This action involves two separate defendants—PNC Bank, National Association and Early Warning Services, LLC—whose alleged conduct, statutory duties, defenses, and legal theories differ materially. Amendments addressing allegations involving one defendant do not necessarily establish that amendment would be futile as to the other. Consequently, the procedural history must be evaluated in light of the claims asserted against EWS specifically rather than by

reference to a generalized count of pleadings filed in the action.

Moreover, many of the alleged deficiencies identified by EWS concern information that remains uniquely within EWS's possession, including the contents of Plaintiff's consumer file, EWS's disclosure practices, reinvestigation procedures, internal policies, communications, and records. EWS simultaneously argues that Plaintiff failed to plead these matters while opposing any opportunity for discovery that would permit Plaintiff to obtain the information necessary to address them. Rule 15 does not permit dismissal with prejudice based upon information asymmetry created by the party seeking dismissal.

To the extent EWS contends Plaintiff has already amended "three times," Plaintiff respectfully submits that the Court should evaluate the actual procedural history reflected by the docket and operative pleadings rather than Defendant's characterization. The relevant question is not the arithmetic of prior filings but whether the operative Second Amended Complaint, construed under the liberal standards applicable to Rule 8 and pro se pleadings, plausibly states claims for relief under the Fair Credit Reporting Act. For the reasons set forth throughout Plaintiff's Opposition and this Surreply, it does.

Finally, even assuming arguendo that the Court concludes additional factual specificity is required as to one or more allegations, the proper remedy under Rule 15 would be to permit amendment tailored to those specific issues rather than imposing the extraordinary sanction of dismissal with prejudice. Because EWS has not demonstrated that amendment would necessarily be futile as a matter of law, its request for dismissal with prejudice should be denied.

## Alternative Ground for Denial

Even if the Court concludes that one or more allegations could be pleaded with greater specificity, EWS has not shown that no set of additional facts consistent with the existing

allegations could state a claim. Accordingly, dismissal with prejudice is unwarranted, and, at minimum, Plaintiff should be granted leave to amend any identified deficiencies rather than having potentially meritorious statutory claims terminated at the pleading stage.


## V. LEAVE TO FILE THIS SURREPLY IS WARRANTED UNDER LOCAL RULE 105.2(a), DISTRICT OF MARYLAND AUTHORITY, AND THE INTERESTS OF FAIRNESS

Local Rule 105.2(a) expressly contemplates that a surreply may be filed with leave of Court. Plaintiff has followed that procedure by requesting leave before filing this Proposed Surreply. The issue, therefore, is not whether surreplies are categorically permitted, but whether this case presents the limited circumstances under which additional briefing promotes fairness and assists the Court in resolving the pending motion.

It does.

The leading District of Maryland authority is **Khoury v. Meserve**, 268 F. Supp. 2d 600, 605 (D. Md. 2003), which explains that surreplies may be appropriate when the nonmoving party would otherwise be unable to address matters presented for the first time in a reply memorandum. Subsequent decisions have consistently applied that principle, recognizing that leave is appropriate where a reply introduces new arguments, new legal theories, or materially different characterizations that could not have been addressed in the original opposition, including **Medish v. Johns Hopkins Health System Corp.**, **Boland v. Amazon.com Sales, Inc.**, **Clawson v. FedEx Ground Package System, Inc.**, and **Suchin v. Fresenius Medical Care Holdings, Inc.**

Those authorities support leave here because EWS's Reply does considerably more than respond to Plaintiff's opposition.

Among other things, EWS:

- asks the Court to disregard Plaintiff's Updated Opposition;
- advances a new "internal contradiction" theory concerning Plaintiff's § 1681g allegations;
- argues for the first time that Plaintiff's reliance on CFPB pattern evidence is legally irrelevant;
- contends that Plaintiff's need for discovery cannot be considered in evaluating plausibility;
- seeks dismissal with prejudice rather than leave to amend; and
- materially reframes the allegations of the Second Amended Complaint in ways not presented in its opening memorandum.

Without leave to file this Surreply, Defendant would effectively receive the final substantive word on arguments first advanced after Plaintiff's opposition had already been filed.

Federal Rule of Civil Procedure 7(b) authorizes motions requesting such relief, and Rule 6(b)(1) further recognizes the Court's authority to enlarge time upon a showing of good cause where justice requires. Plaintiff has acted diligently, in good faith, and without dilatory purpose. Defendant identifies no meaningful prejudice from permitting this focused Surreply, while denial would leave substantial new arguments unanswered.

Under **Clawson**, if the Court determines that a surreply should not be permitted, the appropriate alternative is to decline consideration of the new arguments first raised in EWS's Reply rather than allowing Defendant to obtain the final word on matters Plaintiff had no procedural opportunity to address.

Accordingly, the Court should grant Plaintiff leave to file this Proposed Surreply.

**Even if the Court concludes that one or more of EWS's new arguments merely expands rather than entirely replaces its original motion, fairness still favors consideration of this Surreply because it materially assists the Court in evaluating a dispositive Rule 12(b)(6) motion on a complete adversarial record rather than a one-sided presentation of newly advanced theories.**

## VI. EWS MISSTATES THE SECOND AMENDED COMPLAINT BY RECASTING PLAINTIFF'S DISCLOSURE-BASED FCRA CLAIMS AS SPECULATIVE PLEADING DEFICIENCIES

EWS's Reply is premised upon a characterization of the Second Amended Complaint that differs materially from what Plaintiff actually alleged. Rather than addressing the Complaint as written, EWS repeatedly narrows Plaintiff's allegations into isolated assertions concerning "inaccuracy" while minimizing or omitting Plaintiff's independent claims concerning statutory disclosure obligations, reasonable procedures, reasonable reinvestigation, and continuing statutory duties under the Fair Credit Reporting Act ("FCRA"). That reframing materially alters the issues presented by Rule 12(b)(6).

A Rule 12(b)(6) motion must be evaluated based upon the allegations actually pleaded—not upon a defendant's narrower characterization of those allegations.

### A. EWS Incorrectly Treats Plaintiff's Claims as Depending Upon Knowledge That Plaintiff Alleges EWS Withheld.

The Second Amended Complaint alleges that EWS maintained consumer-reporting information concerning Plaintiff, that EWS supplied information used in connection with Plaintiff's unsuccessful efforts to obtain banking services, that Plaintiff repeatedly disputed the adverse information, that Plaintiff repeatedly sought complete file disclosure and source information, that Plaintiff supplied identity-verification materials requested by EWS, and that EWS nevertheless failed to comply with its statutory duties regarding disclosure, reasonable procedures, and reinvestigation.

EWS nevertheless argues that Plaintiff's claims fail because Plaintiff supposedly cannot identify every specific adverse item, every internal coding decision, every verification step, every source record, or every component of EWS's internal file.

9

That argument assumes the very proposition Plaintiff disputes.

Plaintiff alleges that EWS failed to disclose information Congress required it to disclose. EWS responds by arguing Plaintiff cannot identify information allegedly withheld by EWS. The argument is circular.

Congress enacted § 1681g precisely because consumers ordinarily cannot identify the contents of a consumer reporting agency's internal file without disclosure by the agency maintaining those records. If a consumer were required to plead every undisclosed record before obtaining relief under § 1681g, the statute would become largely unenforceable.

EWS's interpretation effectively rewrites the disclosure requirement into a prerequisite impossible for consumers to satisfy whenever disclosure itself is the alleged violation.

## Analysis

EWS's reasoning depends upon several unstated assumptions:

**Assumption One:** Plaintiff necessarily knows every item maintained within EWS's consumer file.

The Complaint alleges the opposite.

**Assumption Two:** Plaintiff's inability to identify undisclosed records demonstrates that no undisclosed records exist.

That conclusion does not logically follow.

**Assumption Three:** Rule 8 requires Plaintiff to plead facts exclusively within Defendant's possession.

Neither Rule 8 nor Rule 12 imposes such a requirement.

**Assumption Four:** Discovery cannot assist in identifying records that Defendant allegedly failed to disclose.

10

Again, that assumption simply presumes the merits of Defendant's position.

Under the Paul–Elder standards of logical reasoning, each assumption lacks adequate factual support and improperly substitutes inference favorable to Defendant for the pleading standard requiring reasonable inferences in Plaintiff's favor.

## B. EWS Separates Plaintiff's FCRA Claims Into Artificial Components That Ignore Their Interrelationship.

The Reply repeatedly analyzes §§ 1681e(b), 1681g, and 1681i as though each exists in complete isolation.

The statutory scheme does not operate that way.

Congress designed these provisions to work together.

Section 1681g provides consumers access to information contained in their files.

Section 1681i provides an avenue for disputing information discovered through disclosure or otherwise learned.

Section 1681e(b) requires reasonable procedures to assure maximum possible accuracy.

Plaintiff's allegations follow that statutory progression.

Plaintiff alleges:

- adverse banking consequences;
- requests for disclosure;
- disputes concerning adverse information;
- requests for reinvestigation;
- continued maintenance or verification of adverse information;
- continuing injury.

Rather than reading those allegations collectively, EWS isolates individual paragraphs and argues each statutory subsection independently fails because Plaintiff allegedly cannot identify information that, according to Plaintiff, EWS failed to disclose.

That is not a fair reading of the Complaint.

Federal pleading rules require the Complaint to be construed as a whole rather than paragraph-by-paragraph in isolation.

## C. EWS Omits Material Allegations Supporting Plausibility.

The Reply discusses what Plaintiff supposedly failed to allege while giving little or no attention to allegations that Plaintiff:

- repeatedly sought disclosure;
- repeatedly disputed adverse information;
- repeatedly attempted to verify identity;
- continued suffering adverse banking consequences;
- communicated with both EWS and PNC concerning the disputed reporting;
- alleged continuing statutory violations rather than a single isolated event.

These allegations materially distinguish this action from complaints dismissed because they contained only conclusory assertions unsupported by factual context.

Whether Plaintiff ultimately proves those allegations is a question for discovery and later dispositive motions—not Rule 12(b)(6).

## D. EWS Improperly Converts Factual Disputes Into Pleading Deficiencies.

Throughout its Reply, EWS repeatedly argues factual conclusions rather than pleading defects.

Examples include assertions concerning:

- what information existed;
- what disclosures were made;
- whether disclosures were complete;
- whether reinvestigation was reasonable;
- whether procedures were reasonable;
- whether Plaintiff suffered actionable injury.

Each concerns disputed facts.

Rule 12(b)(6) does not authorize the Court to decide whose factual version is correct.

The question is simply whether Plaintiff has plausibly alleged facts that, if proven, could establish violations of the FCRA.

He has.

## E. The Complaint Must Be Read Consistently With Liberal Construction Principles Applicable to Pro Se Litigants.

Plaintiff proceeds without counsel.

While pro se status does not excuse compliance with substantive law, federal courts consistently construe pro se pleadings liberally and evaluate them based upon substance rather than technical form.

EWS instead advocates the opposite approach.

Its Reply repeatedly parses individual allegations in isolation, demands pleading precision regarding facts allegedly controlled by Defendant, and asks the Court to construe every ambiguity against Plaintiff.

That approach is inconsistent with the governing Rule 12(b)(6) standard and the liberal construction traditionally afforded pro se pleadings.

## Distinguishing EWS's Authorities

To the extent EWS relies upon cases dismissing complaints that merely speculated an inaccuracy might exist, those authorities are distinguishable.

Plaintiff does not merely speculate.

He alleges:

- adverse banking decisions;
- EWS involvement;
- repeated disclosure requests;
- repeated disputes;
- repeated identity-verification submissions;
- continuing failures of disclosure;
- continuing failures of reinvestigation;
- resulting injury.

Likewise, authorities involving plaintiffs who never alleged requests for disclosure, never alleged statutory disputes, or relied solely upon conclusory allegations do not control where

13

Plaintiff alleges repeated efforts to obtain disclosure and correction that Defendant allegedly failed to provide.

Accordingly, EWS's authorities should be limited to their particular facts rather than extended to foreclose claims materially different from those alleged here.

## Alternative Ground for Denying Dismissal

Even assuming arguendo that one or more allegations could have been pleaded with greater specificity, dismissal remains inappropriate.

At minimum, the Complaint plausibly alleges that:

- EWS maintained consumer-reporting information concerning Plaintiff;
- EWS failed to provide complete disclosure required by § 1681g;
- EWS failed to employ reasonable procedures under § 1681e(b);
- EWS failed to conduct a reasonable reinvestigation under § 1681i;
- Plaintiff suffered continuing adverse banking consequences.

Any remaining factual uncertainty concerns information uniquely within EWS's possession and therefore presents a classic discovery issue rather than a pleading defect.

Accordingly, dismissal should be denied even if the Court concludes additional factual development ultimately will be required to resolve the merits of Plaintiff's claims.

## VII. EWS MISAPPLIES CONTROLLING FCRA PRECEDENT BY ASKING THE COURT TO RESOLVE FACT-INTENSIVE QUESTIONS OF DISCLOSURE, REASONABLENESS, AND MATERIAL ACCURACY AT THE RULE 12(b)(6) STAGE

EWS's Reply repeatedly invokes Fair Credit Reporting Act precedent while applying those decisions far more broadly than either the statute or the cases themselves permit. The Reply treats factual questions concerning disclosure, reasonable procedures, reasonable reinvestigation, material accuracy, and causation as though they present purely legal questions appropriate for resolution on a motion to dismiss.

They do not.

The governing inquiry under Rule 12(b)(6) is not whether Plaintiff has already proven an FCRA violation. The inquiry is whether Plaintiff has plausibly alleged facts which, if proven through discovery, could establish violations of §§ 1681e(b), 1681g, and 1681i.

The Second Amended Complaint satisfies that standard.

## A. EWS'S ARGUMENT IMPROPERLY COLLAPSES THREE DISTINCT STATUTORY CLAIMS INTO A SINGLE "INACCURACY" REQUIREMENT.

One of the principal analytical defects in EWS's Reply is its implicit assumption that every FCRA claim necessarily rises or falls on Plaintiff's ability to identify one specific inaccurate item appearing in his consumer file.

That assumption is legally incorrect.

Congress imposed different duties through different statutory provisions.

Section 1681g imposes disclosure obligations.

Section 1681e(b) imposes reasonable-procedure obligations.

Section 1681i imposes reinvestigation obligations after disputes.

Although related, these duties are not identical.

A consumer may plausibly allege that a consumer reporting agency:

- failed to make complete disclosures;
- failed to conduct a reasonable reinvestigation;
- employed unreasonable procedures;

or

- maintained materially misleading information.

The statutory provisions overlap but do not merge.

EWS's Reply repeatedly analyzes Plaintiff's claims as though failure to plead one precise inaccurate entry automatically defeats every statutory claim.

Neither the statute nor Fourth Circuit precedent supports such an approach.

Further,

The Reply depends upon another unstated assumption:

**Assumption Five**

If Plaintiff cannot presently identify every disputed entry, then none of the statutory duties were violated.

That assumption improperly substitutes a conclusion for analysis.

The question is whether Plaintiff has plausibly alleged violations of statutory duties.

The Complaint alleges repeated disclosure requests, repeated disputes, repeated verification efforts, continuing adverse consequences, and failures by EWS to satisfy statutory obligations.

Those allegations must be accepted as true at this stage.

## B. EWS MISAPPLIES DALTON BY TREATING REASONABLENESS AS A PURE QUESTION OF LAW.

EWS relies upon **Dalton v. Capital Associated Industries** to support dismissal.

Dalton does not support that result.

Rather, Dalton recognizes that a consumer reporting agency must follow reasonable procedures to assure maximum possible accuracy and that reasonableness ordinarily depends upon the surrounding facts.

Dalton did not hold that a consumer must plead the internal mechanics of a CRA's procedures before discovery.

Nor did Dalton authorize dismissal whenever the defendant disputes the consumer's allegations concerning reasonableness.

Instead, Dalton recognizes that reasonableness depends upon factual circumstances, including the information available to the CRA, the nature of the dispute, the steps undertaken, and the adequacy of verification.

16

Those matters are uniquely within EWS's possession.

Plaintiff cannot be expected, prior to discovery, to identify:

- internal procedural manuals;
- employee training;
- verification protocols;
- automated decision rules;
- database architecture;
- communications with furnishers;
- internal investigation notes.

Those are classic subjects for discovery.

EWS's interpretation would effectively immunize consumer reporting agencies from suit whenever the relevant information remained exclusively within their own files.

Dalton does not establish such a rule.

## C. EWS MISAPPLIES JOHNSON BY CONFUSING THE EXISTENCE OF AN INVESTIGATION WITH ITS REASONABLENESS.

The Reply also relies upon authority discussing reinvestigation obligations.

The governing principle recognized by the Fourth Circuit is not that any investigation satisfies the statute.

Rather, the investigation must be reasonable under the circumstances.

Whether an investigation occurred is not the same question as whether it satisfied statutory obligations.

Plaintiff alleges that:

- disputes were submitted;
- information was provided;
- EWS failed to conduct a reasonable reinvestigation;
- adverse consequences continued.

EWS responds by asserting that Plaintiff has not pleaded precisely how the investigation was deficient.

17

Again, the alleged investigative procedures remain exclusively within EWS's control.

Plaintiff cannot plead facts concealed from him.

Rule 8 does not require omniscience.

**Further,**

Here EWS again assumes:

**Assumption Six**

If Plaintiff cannot identify each investigative step performed by EWS, then no unreasonable

investigation occurred.

That conclusion does not logically follow.

Consumers ordinarily do not know:

- which records were reviewed;
- who conducted the investigation;
- what databases were consulted;
- what communications occurred;
- whether independent verification occurred.

Those are precisely the issues discovery is intended to illuminate.

## D. EWS MISREADS SAUNDERS BY REDUCING "ACCURACY" TO LITERAL CORRECTNESS.

To the extent EWS argues that Plaintiff cannot state an FCRA claim absent proof that

information was literally false, the argument overlooks Fourth Circuit recognition that

information may violate the Act when it is materially misleading even if technically accurate in

isolation.

Material completeness matters.

Context matters.

Consumer reporting agencies cannot avoid statutory scrutiny simply because isolated facts may

18

be technically correct while the overall presentation creates a materially misleading impression.

Plaintiff alleges precisely that type of continuing reporting problem.

Whether Defendant's reporting created materially misleading impressions cannot be resolved from pleadings alone.

## E. EWS'S TREATMENT OF § 1681g MISUNDERSTANDS THE PURPOSE OF DISCLOSURE.

Section 1681g exists because consumers frequently do not know the contents of their files.

Congress therefore required consumer reporting agencies to disclose information so consumers could identify errors, dispute inaccuracies, and protect themselves from adverse decisions.

EWS's argument effectively reverses that statutory framework.

According to Defendant, Plaintiff cannot maintain a disclosure claim because he cannot identify information Defendant allegedly failed to disclose.

That interpretation renders the disclosure statute self-defeating.

If accepted, a consumer reporting agency could defeat every disclosure claim simply by withholding information and then arguing the consumer cannot identify what was withheld.

Congress plainly intended the opposite.

The disclosure requirement exists to eliminate precisely that informational imbalance.

## F. DISCOVERY IS NOT AN IMPROPER SUBSTITUTE FOR PLEADING; IT IS THE MECHANISM FOR TESTING PLAUSIBLE ALLEGATIONS.

Perhaps the most significant legal error in EWS's Reply is its repeated assertion that discovery cannot cure deficient pleading.

As a general proposition, that statement is unobjectionable.

But it misses Plaintiff's argument entirely.

Plaintiff does not contend discovery should replace pleading.

19

Plaintiff contends the Complaint already satisfies Rule 8.

Discovery becomes relevant because EWS argues Plaintiff must identify facts that remain exclusively within Defendant's possession.

Those are two entirely different propositions.

Plaintiff alleges plausible statutory violations.

Discovery then permits the parties to determine:

- what information EWS maintained;
- what disclosures occurred;
- what investigations occurred;
- what procedures governed those investigations;
- whether the disclosures complied with §1681g;
- whether reinvestigations complied with §1681i;
- whether procedures satisfied §1681e(b).

That is precisely how federal civil litigation is intended to function.

## G. EWS'S CONTINUED RELIANCE ON STALE, DISPUTED, AND UNVERIFIABLE ADVERSE INFORMATION INDEPENDENTLY SUPPORTS DENIAL OF DISMISSAL.

EWS's Reply also fails to grapple with a distinct and independently sufficient basis for denying dismissal: Plaintiff alleges that EWS continued relying upon and furnishing aged, disputed, and unverifiable adverse banking-risk information without reasonably determining whether that information remained accurate, verifiable, current, or fair to use. This defect exists whether or not the Court accepts EWS's characterization of Plaintiff's disclosure and reinvestigation allegations addressed above.

Congress did not leave the staleness of adverse consumer information unregulated. Section 1681c(a) restricts the reporting of specified categories of adverse information after defined time periods precisely because stale information becomes increasingly unreliable, disconnected from a consumer's present circumstances, and unfairly prejudicial the longer a furnisher or reporting agency continues to rely upon it. See 15 U.S.C. § 1681c(a). That statutory judgment reflects the broader remedial purpose of the FCRA, which this Circuit has recognized exists to protect consumers from inaccurate and unfair credit reporting practices and to require reasonable procedures assuring maximum possible accuracy. Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 414 (4th Cir. 2001).

The relevant question is not simply whether adverse information existed at some point in the past, but whether EWS could reasonably continue relying upon and furnishing that information years later without adequately determining whether it remained accurate, verifiable, disputed,

20

recalled, superseded, or relevant to Plaintiff's present banking risk. Plaintiff alleges that EWS did not make that determination, and that its continued reliance on outdated and disputed information created a materially misleading impression of Plaintiff's current financial reliability.

That allegation states a claim. The Fourth Circuit has long recognized that information may violate the FCRA where it creates a materially misleading impression, even if particular components of that information are technically accurate in isolation. Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 148–150 (4th Cir. 2008). Context and completeness matter; a reporting agency cannot immunize itself from liability merely because an isolated historical fact was once correct while the overall presentation it continues to furnish misrepresents a consumer's present reliability.

Nor can EWS obtain dismissal by characterizing the reasonableness of its continued reliance on that information as a purely legal question. The Fourth Circuit has held that the reasonableness of a furnisher's or reporting agency's investigative and verification procedures, and the reasonableness of continued reliance upon disputed information, are ordinarily questions of fact unsuited to resolution on the pleadings unless the record permits only one conclusion. Dalton, 257 F.3d at 416–17; Johnson v. MBNA Am. Bank, N.A., 357 F.3d 426, 430–31 (4th Cir. 2004) (furnishers must conduct meaningful and reasonable investigations after notice of a dispute). Plaintiff alleges that EWS failed to reasonably investigate whether the adverse information it continued to use remained sufficiently reliable, current, and fair, and that determination cannot be made against Plaintiff at the pleading stage.

EWS's Reply does not seriously dispute that it functions, at minimum, as a specialty consumer reporting agency with respect to the banking-risk information at issue. Persuasive authority from other circuits confirms that entities which assemble, evaluate, and furnish consumer information for use in third-party eligibility determinations are subject to the FCRA's accuracy and reasonable-procedure requirements regardless of whether they resemble a traditional nationwide credit bureau. See Smith v. LexisNexis Screening Solutions, Inc., 837 F.3d 604, 610–11 (6th Cir. 2016); Kidd v. Thomson Reuters Corp., 925 F.3d 99, 104–106 (2d Cir. 2019). Plaintiff alleges that EWS assembles, evaluates, maintains, and furnishes consumer banking-risk information used to determine eligibility for banking services, and that PNC relied upon EWS-generated or EWS-derived information in the adverse account-screening determination affecting Plaintiff. Those allegations are sufficient to place EWS's conduct within the FCRA's reach at this stage.

Controlling Fourth Circuit authority further confirms that FCRA claims premised on continued reliance upon disputed information may proceed where the information is objectively and readily verifiable by the furnisher or reporting agency itself. Roberts v. Carter-Young, Inc., 131 F.4th 241, 252–53 (4th Cir. 2025). Plaintiff alleges that EWS possessed superior access to the very records, screening criteria, and reinvestigation procedures necessary to verify whether the adverse information it continued to use remained accurate and current, and that EWS nevertheless continued relying upon it without doing so.

At minimum, these allegations raise fact-intensive questions that cannot be resolved on a motion directed solely to the pleadings, including:

21

- the age of the adverse information EWS continued to use or furnish;
- EWS's retention and purge policies governing that information;
- EWS's dispute and reinvestigation history concerning that information;
- any recalls, suppressions, corrections, or modifications EWS made or failed to make;
- the relationship and information-sharing practices between EWS and PNC;
- EWS's internal account-screening and eligibility criteria; and
- whether EWS's procedures for using aged information complied with the FCRA's requirements of fairness, relevance, and reasonable accuracy.

These are classic discovery subjects, not pleading deficiencies. Dismissal is therefore independently inappropriate on this basis, regardless of how the Court resolves EWS's disclosure- and reinvestigation-based arguments addressed above.

# Distinguishing Defendant's Authorities

Each authority cited by EWS must be evaluated according to its facts.

To the extent Defendant relies upon decisions involving:

- no dispute letter,
- no disclosure request,
- no continuing injury,
- no allegations of withheld file information,
- no allegations of repeated reinvestigation requests,

those decisions are materially distinguishable from Plaintiff's allegations.

Likewise, cases decided after summary judgment or following developed factual records cannot simply be transplanted into Rule 12(b)(6) analysis.

The procedural posture matters.

This case remains at the pleading stage.

## Alternative Ground Supporting Denial

Even if the Court concludes some aspect of Plaintiff's allegations could benefit from additional factual detail, dismissal still should be denied.

At minimum, the Second Amended Complaint plausibly alleges:

- statutory duties owed by EWS;
- repeated requests invoking those duties;
- repeated failures to satisfy those duties;
- continuing adverse consequences;
- resulting injury.

Those allegations easily satisfy Rule 8.

Any remaining questions concern Defendant's internal records and conduct, making dismissal inappropriate before discovery.

Accordingly, dismissal should be denied even assuming arguendo that Defendant correctly identifies one or more factual issues requiring later development, because those issues concern proof—not pleading.

## VIII. EWS'S ARGUMENT CONCERNING 15 U.S.C. § 1681g IMPROPERLY REQUIRES PLAINTIFF TO IDENTIFY INFORMATION THAT EWS ALLEGEDLY FAILED TO DISCLOSE

EWS's Reply devotes substantial attention to Plaintiff's claim under 15 U.S.C. § 1681g, contending that Plaintiff's allegations are internally inconsistent because Plaintiff simultaneously alleges that EWS failed to provide complete file disclosures while also alleging that he was injured by adverse information maintained by EWS. Defendant's argument rests upon a false premise and materially mischaracterizes both the statute and the Second Amended Complaint. Section 1681g exists because Congress recognized that consumers ordinarily do not know what information consumer reporting agencies maintain concerning them. Congress therefore required consumer reporting agencies, upon proper request, to disclose the information contained in the consumer's file so that consumers could determine whether the information was accurate, complete, current, and lawfully maintained.

Plaintiff's allegations follow precisely that statutory framework.

Plaintiff alleges that he experienced adverse banking consequences, repeatedly sought disclosure from EWS, repeatedly disputed the information associated with those adverse actions, provided identity-verification materials requested by EWS, and nevertheless did not receive the complete information necessary to determine the full nature and source of the adverse information

23

maintained by EWS.

Those allegations are not contradictory.

They are entirely consistent.

A consumer may know that adverse action occurred without knowing every item contained within the consumer reporting agency's file.

Indeed, that informational imbalance is the very reason Congress enacted § 1681g.

## A. EWS'S "INTERNAL CONTRADICTION" THEORY DEPENDS UPON AN INCORRECT READING OF THE COMPLAINT.

The Reply assumes that because Plaintiff knew he was denied banking services, Plaintiff necessarily knew every record maintained by EWS.

The Complaint alleges no such thing.

Knowing that an adverse decision occurred is fundamentally different from knowing:

- every source of information relied upon;
- every internal code or notation maintained by EWS;
- every historical entry maintained in Plaintiff's file;
- every communication between EWS and financial institutions;
- every investigative notation;
- every database consulted during reinvestigation;
- every item omitted from Plaintiff's disclosures.

The Second Amended Complaint alleges that Plaintiff repeatedly attempted to obtain that information.

EWS's Reply simply assumes Plaintiff already possessed it.

Further,

The Reply fails the standards of **clarity**, **accuracy**, and **logic** because it conflates two entirely different propositions:

**Proposition One**

Plaintiff knew that adverse banking decisions occurred.

24

**Proposition Two**

Plaintiff knew every item contained in EWS's consumer file.

The first proposition does not establish the second.

The inference EWS asks the Court to draw is unsupported by either the pleadings or ordinary experience.

Consumers frequently know they have been denied credit or banking services without possessing the underlying consumer-report information that produced the denial.

Congress enacted § 1681g to eliminate precisely that informational asymmetry.

## B. EWS'S INTERPRETATION WOULD EFFECTIVELY NULLIFY § 1681g.

Accepting EWS's interpretation would produce an absurd result.

Whenever a consumer alleged that a consumer reporting agency failed to provide complete disclosure, the agency could simply respond:

"You cannot identify the undisclosed information; therefore, your disclosure claim fails."

That reasoning would make § 1681g largely unenforceable.

The statute presumes that the consumer does **not** already possess the information maintained by the reporting agency.

Accordingly, Plaintiff's inability to identify every undisclosed record supports—not defeats—the plausibility of his disclosure claim.

## C. THE SECOND AMENDED COMPLAINT DOES NOT SEEK TO SHIFT THE BURDEN OF PROOF.

EWS repeatedly suggests Plaintiff seeks discovery merely to determine whether a claim exists.

That misstates the Complaint.

Plaintiff has already alleged:

- adverse actions;
- repeated disclosure requests;
- repeated disputes;
- identity verification;
- continuing injury;
- statutory violations.

25

Discovery is sought because Defendant possesses the evidence necessary to prove or disprove those allegations.

That is the ordinary function of discovery.

Rule 8 does not require Plaintiff to attach EWS's internal databases before filing suit.

## IV. EWS'S ATTACK ON PLAINTIFF'S PATTERN-AND-PRACTICE ALLEGATIONS MISCHARACTERIZES THEIR PURPOSE.

EWS also argues that Plaintiff's references to CFPB complaints, regulatory materials, and other publicly available information are irrelevant.

Again, Defendant attacks an argument Plaintiff does not make.

Plaintiff does **not** contend that unrelated consumer complaints establish liability in this case.

Nor does Plaintiff contend that aggregate complaint data independently proves any statutory violation.

Instead, Plaintiff relies upon those materials for significantly narrower purposes, including:

- notice;
- knowledge;
- willfulness where applicable;
- absence of mistake;
- discovery concerning Defendant's procedures;
- context regarding Defendant's consumer-reporting practices;
- the existence of recurring issues warranting factual development.

Those are materially different uses.

## Analysis

EWS's reasoning again depends upon an unstated assumption.

**Assumption Seven**

If evidence does not independently establish liability, it has no relevance whatsoever.

That assumption is legally incorrect.

Evidence may be relevant for many purposes other than proving ultimate liability.

Pattern evidence frequently bears upon:

26

- notice;
- knowledge;
- intent;
- willfulness;
- feasibility;
- absence of mistake;
- discovery scope.

Plaintiff has consistently advanced the evidence for those limited purposes.

EWS responds as though Plaintiff seeks to establish liability through complaint counts alone.

That is a materially different argument.

## D. WHETHER SUCH EVIDENCE WILL ULTIMATELY BE ADMISSIBLE IS NOT A RULE 12(b)(6) QUESTION.

The Court need not determine at this stage the ultimate admissibility of every exhibit Plaintiff

intends to offer.

Rule 12(b)(6) concerns the sufficiency of the Complaint.

Evidentiary rulings ordinarily arise through motions in limine, summary judgment, or trial.

Consequently, EWS's evidentiary objections do not establish that Plaintiff failed to state

plausible statutory claims.

## IX. EWS'S REQUEST FOR DISMISSAL WITH PREJUDICE IS PREMATURE, PROCEDURALLY UNSUPPORTED, AND CONTRARY TO FEDERAL PLEADING PRINCIPLES.

Even assuming arguendo that the Court identified one or more pleading deficiencies, EWS's

request for dismissal **with prejudice** remains unwarranted.

Several considerations independently compel that conclusion.

### A. Plaintiff Is Proceeding Without Counsel.

Federal courts routinely recognize that leave to amend should be liberally granted, particularly

where a pro se litigant could cure any perceived pleading deficiency.

Nothing in EWS's Reply demonstrates that amendment would necessarily be futile.

## B. The Record Demonstrates Plaintiff's Continuing Efforts To Clarify And Refine His Allegations.

The procedural history reflects repeated efforts by Plaintiff to refine, supplement, and clarify his allegations rather than abandon them.

That procedural history weighs strongly against dismissal with prejudice.

## C. The Relevant Information Remains Within Defendant's Possession.

The alleged deficiencies identified by EWS concern:

- internal records;
- internal procedures;
- investigative methods;
- disclosure practices;
- communications with furnishers;
- database contents.

Those subjects remain almost entirely within Defendant's possession.

Dismissal with prejudice before discovery would effectively prevent Plaintiff from obtaining the very information Defendant contends Plaintiff lacks.

## D. Rule 15 Strongly Favors Resolution On The Merits.

Federal practice strongly favors deciding cases upon their merits rather than technical pleading deficiencies where amendment remains possible.

Accordingly, even if the Court concludes additional factual allegations would be appropriate, the proper remedy would be leave to amend rather than dismissal with prejudice.

## X. ALTERNATIVE GROUNDS INDEPENDENTLY REQUIRE DENIAL OF DISMISSAL.

Even if the Court were to accept portions of EWS's legal analysis, dismissal should nevertheless be denied for several independent reasons.

First, Plaintiff plausibly alleges continuing statutory violations affecting multiple provisions of the FCRA.

Second, Defendant's arguments largely concern factual disputes inappropriate for Rule 12(b)(6).

Third, the Second Amended Complaint, construed liberally, provides Defendant fair notice of the claims asserted and the factual basis supporting those claims.

Fourth, discovery remains necessary because Defendant controls the overwhelming majority of the relevant evidence.

Fifth, should the Court determine greater specificity is required, Rule 15 provides the appropriate mechanism.

Accordingly, dismissal remains inappropriate under any analytical framework.

## XI. APPELLATE PRESERVATION

Without conceding that dismissal would be proper, Plaintiff respectfully preserves the following issues for appellate review should dismissal ultimately occur:

1. Whether a consumer reporting agency may obtain Rule 12(b)(6) dismissal by requiring a consumer to plead information the agency allegedly failed to disclose under § 1681g.
2. Whether questions concerning the reasonableness of procedures under § 1681e(b) may ordinarily be resolved before discovery where the relevant procedures remain exclusively within the CRA's possession.
3. Whether the reasonableness of a reinvestigation under § 1681i presents factual questions unsuitable for resolution solely upon the pleadings.
4. Whether a district court may construe a pro se complaint narrowly rather than liberally when evaluating plausibility under Rule 12(b)(6).
5. Whether dismissal with prejudice constitutes an abuse of discretion where amendment remains possible and the alleged deficiencies concern information uniquely possessed by the defendant.
6. Whether new procedural and substantive arguments first advanced in a reply memorandum may properly be considered without permitting the opposing party a meaningful opportunity to respond.

These issues are preserved to ensure that no legally supportable argument is deemed waived by Plaintiff's continued opposition to dismissal.

## XII.                                   <u>CONCLUSION</u>

For all of the foregoing reasons, and for the reasons stated in Plaintiff's Opposition and the Second Amended Complaint, Defendant Early Warning Services, LLC's Motion to Dismiss should be denied in its entirety. In the alternative, should the Court conclude that any allegation requires additional factual specificity, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice. Plaintiff further requests that the Court grant leave to file this Proposed Surreply or, alternatively, decline to consider the new arguments first raised in Defendant's Reply.

Respectfully submitted,

Gary Hamilton
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **1st day of July, 2026**, I caused a true and correct copy of the foregoing **Plaintiff's Motion for Leave to File Proposed Surreply and Motion for Extension of Time**, together with the attached Proposed Order and Proposed Surreply certify that the original filing is being **hand-delivered to the Clerk of the United States District Court for the District of Maryland** for filing.

I FURTHER CERTIFY that on this **15th day of July, 2026**, I caused a true and correct copy of the foregoing Proposed Surreply, together with the accompanying Motion for Leave to File Proposed Surreply and Motion for Extension of Time and Proposed Order, to be served upon counsel for Defendant Early Warning Services, LLC by **U.S. Mail, First Class, postage prepaid**, addressed as follows:

**Elizabeth M. Briones (MD Bar 30844)**
Troutman Pepper Locke LLP
401 9th St., N.W., Suite 1000
Washington, DC 20004-2134
Counsel for Defendant Early Warning Services, LLC

Respectfully submitted,

**Gary Hamilton**
Plaintiff, Pro Se